IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

Case No. 19-10094-EFM

COREY A. LOGAN,

    *Defendant.*

# MEMORANDUM AND ORDER

Before the Court is Defendant Corey A. Logan's Motion to Suppress (Doc. 12). A grand jury indicted Logan on two counts: manufacture of psilocin/psilocybin mushrooms (Count 1) and possession with the intent to distribute psilocin/psilocybin mushrooms (Count 2). The Court held a hearing on this matter on February 13, 2020. For the following reasons, the Court now denies Logan's motion.

## I.    Factual and Procedural Background

Early in the morning on March 29, 2018, Logan and Samantha Case were inside Logan's house in Wichita when Logan attempted to answer the front door in response to multiple knocks. Before Logan had opened his front door, bullets were fired into the house and at least one struck

him.  Logan was unable to identify the shooter, who apparently fled the scene.  After realizing Logan had been shot, Case called 911 to report the incident.

The first responder to arrive was Wichita Police Officer Steven McKenna at approximately 2:19 a.m.  When McKenna arrived at Logan's house, Case was standing in the front doorway and yelling for McKenna to help Logan.  McKenna followed Case to the south bedroom where he found Logan lying on his right side on the bedroom floor.  McKenna observed at least one gunshot wound on Logan's left side, immediately below his ribs.  Medical personnel arrived at approximately 2:22 a.m. and removed Logan from the house and rushed him to the hospital.

While McKenna and the EMTs were inside helping Logan, other police officers arrived at the house.  They noticed five bullet holes on the east side of the residence just north of the front door.  The bullets fired into the mobile home appeared to have entered the residence into the north bedroom.  The officers also located bloodstains on the floor inside the front door and at least two bullet holes which had penetrated the closed door to the north bedroom.  Five 9mm shell casings were located in the yard outside of the front door, 10-15 feet from the bullet holes on the east side of the mobile home.  McKenna asked Logan if the officers had permission to re-enter his residence to search for more evidence.  Logan did not grant them permission.  Nevertheless, officers re-entered Logan's house to search for potential additional victims.

When officers re-entered Logan's house, one opened the door to the north bedroom.  He immediately recognized, based upon training and previous investigations, a mushroom (psilocybin) grow operation.  In addition, in the living room of the trailer, the officer observed a pipe commonly associated with the use of marijuana.  The officers found no additional victims in the residence.

After completing the cursory search for additional victims, the officers exited the residence, secured it, and obtained a search warrant from Sedgwick County District Court Judge William Wooley. The search warrant authorized the officers' re-entry into Logan's house to further investigate the shooting, the mushroom grow operation, and the possession of marijuana. The warrant authorized the seizure of evidence related to those crimes.

In June 2019, a federal grand jury returned a two-count indictment, charging Logan with the manufacture of psilocin/psilocybin mushrooms (Count 1) and possession with the intent to distribute psilocin/psilocybin mushrooms (Count 2). Logan moved to suppress evidence of these crimes, arguing the officers violated his Fourth Amendment rights. The Court held an evidentiary hearing on the motion on February 12, 2020. For the following reasons, the Court now denies Logan's motion to suppress.

## II. Legal Standard

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."[1] Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure."[2] If a search or seizure violates the Fourth Amendment, the "fruit of the poisonous tree" doctrine prohibits the admission of any subsequently obtained evidence, including information, objects, or statements.[3]

---

[1] U.S. CONST. amend. IV.

[2] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

[3] *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).

Searches must be authorized by a warrant unless an exception to the warrant requirement applies.[4] The government bears the burden to prove that a warrantless search or seizure was justified.[5]

### III. Analysis

Logan asks this Court to suppress the evidence collected from his house, arguing that the officers violate his Fourth Amendment rights by unreasonably searching his home without a warrant or exception to the warrant requirement. The Government argues that that the search was reasonable and justified under multiple exceptions to the warrant requirement, namely that exigent circumstances existed permitting the officers to search Logan's residence for additional victims without a warrant. The Government also argues that the Court should deny the motion to suppress even if the search was unreasonable since the incriminating evidence would have been inevitably discovered pursuant to a warrant to search the crime scene. The Court will consider each of these arguments in turn.

**A.   Exigent Circumstances**

Absent exigent circumstances, officers may not reasonably enter a residence without a warrant.[6] "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."[7] Police may make a warrantless entry into a residence when they have a reasonable belief that exigent circumstances present a significant risk to the safety of the police or others.[8] The two-part

---

[4] *California v. Carney*, 471 U.S. 386, 390 (1985).

[5] *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th Cir. 2001) (citations omitted).

[6] *Kirk v. Louisiana*, 536 U.S. 635, 636 (2002).

[7] *Mincey v. Arizona*, 437 U.S. 385, 392 (1978).

[8] *United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004).

test to determine if exigent circumstances existed to justify the warrantless entry and search is (1) whether the officers had an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search were reasonable.[9] The Government bears the burden of establishing that exigent circumstances made the warrantless entry necessary.[10]

The Government argues that exigent circumstances existed based on two factors. First, the Government argues that the officers needed to protectively sweep the residence in case the assailant was still there, posing a threat to the officers, EMTs, and Case. Second, the Government argues that the officers were justified in searching the house for additional victims since there were multiple bullet holes clearly leading into the north bedroom.

Logan argues that, in addition to the lack of an objectively reasonable basis for the officer's belief in the need to search the residence for more victims or the assailant, the Tenth Circuit in *United States v. Nelson*[11] has disapproved of police department policies mandating "protective sweeps" of residences in all cases. In *Nelson*, officers arrested the defendant in a third-party's home. They proceeded to search the rest of the residence for potential threats to themselves, absent consent from the homeowner. During that search, they discovered evidence incriminating the defendant in other crimes. An officer testified at the suppression hearing that "[o]nce we make entrance into the residence, we're going to check everywhere that a body could be," and that this

---

[9] *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006) (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403-07 (2006)).

[10] *United States v. Reeves*, 524 F.3d 1161, 1169 (10th Cir. 2008) (citing *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998)).

[11] 868 F.3d 885 (10th Cir. 2017).

is a "blanket safety rule" that applies "on any occasion in which [he] mak[es] an arrest" in a residence.[12]

The Court distinguishes the present case from *Nelson* in that *Nelson* addressed protective sweeps in response to arrests, not police responses to emergencies or crime scenes. The officers in the present case responded to Case's 911 call and rendered emergency aid to Logan; they were not arresting Logan at that time. While some testimony at the suppression hearing referenced a department policy of searching a residence for additional victims at a crime scene, the testimony did not establish a "blanket safety rule" of "protectively sweeping" any house where an arrest was occurring. Because the officers responded to an emergency phone call and were not seeking to arrest Logan, the Court concludes that the primary holding of *Nelson* does not apply to the facts at issue here.

The *Nelson* case also noted that the officers must possess an objectively reasonable, articulable belief that other potential assailants remained in the house, posing a continuing threat to the officers.[13] The court there found that the officers lacked such an articulable belief.[14] This Court likewise finds that the officers in the present case lacked an objectively reasonable, articulable belief that Logan's assailant somehow entered the residence after the assault, without either Case or Logan noticing. The Court does not credit the Government's first argument regarding the existence of an exigency.

As to the Government's second argument, however, the Court concludes that the officers had an objectively reasonable basis to believe that another victim could have been in the residence,

---

[12] *Id*. at 892 n.5.

[13] *Id*. at 889–90.

[14] *Id*.

necessitating their re-entry and search. The officers observed five bullet holes in the east side of Logan's residence, leading into the north bedroom. The door to that bedroom remained closed and no one had yet entered the room. Based on those facts, the officers had an objectively reasonable basis to believe that other victims could be inside the north bedroom. The manner and scope of the search were also reasonable, since the officer simply opened the door, entered the room, and observed there were no other victims (but that the room was being used for a mushroom grow operation). As such, they were justified in searching the room under the exigency exception to the warrant requirement.

**B.     Inevitable Discovery**

The Government also argues that the Court should deny suppression because officers would have inevitably discovered it pursuant to a warrant issued to search the crime scene. "The inevitable discovery doctrine provides an exception to the exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it."[15] The Government carries the burden to prove, by a preponderance of the evidence, that the seized evidence would have inevitably been discovered.[16] "If the government can demonstrate inevitable discovery . . . the evidence is not fruit of the poisonous tree and need not be suppressed."[17] For the following reasons, the Court concludes that the Government has carried its burden.

Even assuming that the exigency exception did not apply to the officer's search, the inevitable discovery doctrine would provide another exception to the exclusionary rule. The

---

[15] *United States v. Martinez*, 512 F.3d 1268, 1273 (10th Cir. 2008) (citations and quotations omitted).

[16] *See United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005).

[17] *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006).

search warrant included independently sufficient bases for a lawful search—namely, bullet holes in the side of the residence leading into the front bedroom, bullet casings in the front yard, and bloodstains inside the house. Because of these independent bases, the Government has shown that the search warrant was supported by probable cause such that the officers were justified in searching the home—and specifically the front bedroom—for further evidence of the crimes committed against Logan. Extracting the evidence of a mushroom grow operation from the search warrant, the Court concludes that investigators would have nevertheless discovered evidence of the mushroom grow operation while executing a warrant to discover further evidence of the shooting. As a result, the Government has carried its burden to prove that the evidence would have inevitably been discovered and the Court therefore denies suppression for that reason as well.

**IT IS THEREFORE ORDERED** that Corey A. Logan's Motion to Suppress (Doc. 12) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 14th day of February, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE